IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| MIKE MAYHEW | PLAINTIFF |
| VERSUS | NO. 1:21cv141-SA-DAS |
| JIM JOHNSON, In His Individual Capacity; <br> JOHN HALL, In His Individual Capacity; <br> ROGER CRIBB, In His Individual Capacity; and <br> LEE COUNTY, MISSISSIPPI | DEFENDANT |
| | JURY TRIAL DEMANDED |

## COMPLAINT

This is a civil action to recover actual, compensatory and punitive damages, for the Defendants' violations of Mike Mayhew's First Amendment right to be free from retaliation for political activity; Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and Fourteenth Amendment right to be free from the intentional withholding and suppression of exculpatory information during the course of a criminal prosecution, made actionable pursuant to 42 U.S.C. § 1983; and for false arrest, false imprisonment, malicious prosecution, abuse of process, and tortious interference with contract, made actionable pursuant to Mississippi common law, and the Mississippi Tort Claims Act ("MTCA"). The following averments support this civil action:

PARTIES

1. The Plaintiff, Mike Mayhew, is an adult resident citizen of Lee County, Mississippi.

2. The Defendant, Jim Johnson, in his individual capacity, is an adult resident citizen of Lee County, Mississippi. The Defendant Johnson may be served with process by service of a Complaint and Summons upon him at his place of employment, Lee County Sheriff's Department, 510 North Commerce Street, Tupelo, Mississippi 38804.

3. The Defendant, John Hall, in his individual capacity, is an adult resident citizen of Lee County, Mississippi. The Defendant Hall may be served with process by service of a Complaint and Summons upon him at his place of employment, Lee County Sheriff's Department, 510 North Commerce Street, Tupelo, Mississippi 38804.

4. The Defendant Roger Cribb, in his individual capacity, is upon information and belief an adult resident citizen of Lee County, Mississippi. The Defendant Cribb may be served with process by service of a Complaint and Summons upon him at his residence in Tupelo, Mississippi.

5. The Defendant, Lee County, Mississippi, is a political subdivision of the State of Mississippi. The Defendant Lee County may be served with process by service of a Complaint and Summons upon its Chancery Clerk, Honorable Bill Benson, 200 West Jefferson Street, Tupelo, Mississippi 38804.

JURISDICTION & VENUE

6. This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1343(a)(3) (Civil Rights), and 28 U.S.C. § 1367(a) (Supplemental).

7. Venue is proper in the Northern District of Mississippi, pursuant to 28 U.S.C. § 1391, since substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

CAUSE OF ACTION

8. Prior to commencing a career in law enforcement, Mike Mayhew played professional hockey, ending his career playing for the Tupelo T-Rex. After ending his playing career, Mr. Mayhew worked as a volunteer coach for the Mississippi State University Hockey Team.

9. In 2007, Mr. Mayhew graduated first in his class from the Mississippi Law Enforcement Officer's Training Academy and began his employment with the Lee County Sheriff's Department ("LCSD").

10. Throughout his employment with the LCSD, Mr. Mayhew was a loyal and conscientious employee who performed his duties with aplomb.

11. Until the circumstances which gave rise to the wrongful termination of his employment occurred, Mr. Mayhew maintained an impeccable work record with no

disciplinary actions.

12. Until the circumstances which gave rise to the wrongful termination of his employment occurred, throughout his employment with the LCSD, Mr Mayhew maintained a close and positive working relationship with the Defendant Johnson.

13. On January 29, 2009, the Lee County Courier reported that Mr Mayhew received the Citizen of the Year Award from the Tupelo Exchange Club. The Defendant Johnson authorized the posting of this recognition on the LCSD website.

14. In late 2016, Mr. Mayhew got crossways with the Defendant Hall who served as the Defendant Johnson's Chief Deputy over a trivial and non-work related matter.

15. It is an established fact at the LCSD that anyone who gets crossways with the Defendant Hall gets fired.

16. The Defendant Johnson always acquiesced in these firings regardless of any professional or personal misgivings because he viewed the Defendant Hall as indispensable to the proper functioning of the LCSD due to his excellent administrative skills.

17. Mr. Mayhew suffered from a serious health condition which had bedeviled him for some time and which had previously required medical intervention.

18. The Defendant Johnson knew about this serious health condition and had

previously approved leave, time-off, and modified work duty for Mr. Mayhew when necessary.

19. In early 2017, Mr. Mayhew' serious health condition worsened to the point where surgical intervention was required.

20. The surgery was expected to require Mr. Mayhew to be completely off work for approximately two to four weeks with a gradual return to full duty afterwards.

21. The surgery would also require Mr. Mayhew to have a readily available area to bathe to prevent post-operative infection and allow wound dressings to be changed regularly.

22. Owing to his work ethic and desire to continue to supervise his shift, Mr. Mayhew approached the Defendant Johnson and asked if he could continue to work after his surgery by supervising his shift primarily from home.

23. The Defendant Johnson approved Mr. Mayhew's request and stated that as long as Mr. Mayhew supervised his shift and answered his calls he was unconcerned about where Mr. Mayhew worked from.

24. After this conversation with the Defendant Johnson, Mr. Mayhew notified his immediate supervisor Lieutenant Robert Gwin and informed him of the conversation with the Defendant Johnson.

25. Lieutenant Gwin, well aware of how long Mr. Mayhew continued to come in

and work and supervise his shift despite the tremendous pain he experienced from the serious health condition, also approved the request.

26. Mr. Mayhew then notified his entire shift during a briefing that he would be working primarily from home during his period of post-surgical convalescence and would continue to supervise the shift and answer his calls.

27. On February 6, 2017, Mr. Mayhew underwent surgery in Jackson, Mississippi.

28. After the surgery, Mr. Mayhew requested that his doctor provide him with a release to return to work much sooner than the normal period of convalescence for such a procedure so that he could return to work and supervise his shift.

29. Mr. Mayhew returned to work performing all his normal supervisory job duties in conformity with the permission granted to him by the Defendant Johnson and his immediate supervisor Lieutenant Gwin.

30. At all times Mr. Mayhew was on duty from home he wore his uniform, supervised and maintained constant contact with his shift by radio and cellular phone, answered his calls, and patrolled as able.

31. In the meantime, eager to fabricate a pretext to fire Mr. Mayhew, the Defendant Hall placed or had placed a tracking device on Mr. Mayhew's patrol vehicle on February 15, 2017.

32. Mr. Mayhew was fully aware of and unconcerned about the placement of the tracking device on his patrol car.

33. Furthermore, Mr. Mayhew was also aware that his movements could already be tracked through a chip in the camera of his patrol car.

34. During the time the Defendant Hall gathered GPS data from the device placed on Mr. Mayhew's patrol car he knew or should have known that Mr. Mayhew was authorized by the Defendant Johnson to work from home as part of his modified work duties.

35. On April 17, 2017, Mr. Mayhew was called into a meeting at the Defendant Johnson's office with the Defendant Hall. The Defendant Hall sat behind the Defendant Johnson's desk and falsely accused Mr. Mayhew of getting paid for work that he did not perform due to his spending time at home during his shift.

36. Mr. Mayhew told the Defendant Johnson that he authorized the modification to his work schedule that he and the Defendant Hall were now using as a pretext to fire him.

37. The Defendant Johnson did not contradict Mr. Mayhew's statement, but simply changed the subject and threatened Mr. Mayhew with a bogus extortion charge.

38. The Defendant Johnson told Mr. Mayhew that he could resign or be fired and if he resigned things would "cool-down." The Defendant Johnson also told Mr.

Mayhew that he needed to get the Attorney General's Office ("A.G.'s Office") of his back and stated, "If it's me or you it's going to be you."

39. Now fully aware of the duplicity and dishonesty of the Defendant Johnson, Mr. Mayhew resigned immediately.

40. From that moment on, Mr. Mayhew committed himself to running against the Defendant Johnson for Sheriff and told several individuals known to the Defendant Johnson of his intent to do so.

41. Mr. Mayhew's intent to run for Sheriff against the Defendant Johnson was communicated to the Defendant Johnson by numerous intermediaries and confidantes.

42. One of those confidantes told Mr. Mayhew that the Defendant Johnson told him that Mr. Mayhew, "would never work another job in Lee County."

43. After resigning, Mr. Mayhew applied for employment with the Saltillo Police Department.

44. Prior to meeting with officials from the City of Saltillo to move forward with his hiring, Mr. Mayhew was informed by a city official that the Defendant Johnson, either directly or through an unnamed intermediary, contacted city officials and told them not to hire Mr. Mayhew.

45. Mr. Mayhew also applied for a law enforcement job with the Town of Mantachie but did not hear anything back.

46. On or about August 3, 2017, Mr. Mayhew called the Defendant Johnson regarding rumors of an A.G.'s Office investigation. The Defendant Johnson told Mr. Mayhew to meet him at Papa V's in Tupelo.

47. When asked at their meeting if he had gone to the A.G.'s Office regarding his false accusation against Mr. Mayhew the Defendant Johnson stated, "Yes I did. If it's me or you it's going to be you.

48. The Defendant Johnson added that he had spoken to the A.G. Office's investigator, the Defendant Cribb, and told him that he had authorized Mr. Mayhew to work from home after his surgery. According to the Defendant Johnson he had "taken care of it."

49. The Defendant Johnson also told Mr. Mayhew that he should not run for Sheriff but should run for Justice Court Judge instead.

49. Afterwards, Mr. Mayhew applied with a wrecker service in Lee County, Mississippi and was offered employment. After taking and passing his physical for a Class B license and completing his training, Mr. Mayhew was summarily fired.

50. When he was fired, Mr. Mayhew was told by his employer that he was, "hurting my business."

51. The termination of Mr. Mayhew's employment with the wrecker service was a result of the Defendant Johnson either directly or through an intermediary contacting

9

Mr. Mayhew's employer and telling them that their business would be moved from the wrecker rotation if they continued to employ Mr. Mayhew.

52. After getting fired from the job with the wrecker service, Mr. Mayhew called the Defendant Johnson and dog-cussed him about the termination. The Defendant Johnson told Mr. Mayhew that as a matter of policy the wrecker service could not remain on the rotation service if he worked for them because he was under investigation for a felony offense.

53. In fact, convicted felons and individuals under investigation for felony offenses have been hired by and worked for wrecker services in Lee County with the Defendant Johnson's knowledge and acquiescence.

54. Months after tendering his resignation from the LCSD due to the fabricated and false accusations leveled against Mr. Mayhew by the Defendant Johnson and the Defendant Hall, Mr. Mayhew received a call from the Defendant Cribb saying that he was investigating him.

55. The Defendant Cribb asked if Mr. Mayhew would meet with him to answer questions and Mr. Mayhew readily agreed to do so.

56. The Defendant Cribb and Mr. Mayhew agreed to meet at the Best Western Hotel on North Gloster Street, in Tupelo, Mississippi. The meeting took place in the Fall of 2017, perhaps in November.

57. The Defendant Cribb met Mr. Mayhew in the lobby of the Best Western Hotel. The Defendant Cribb had a yellow notepad and a pen.

58. Mr. Mayhew asked the Defendant Cribb if the interview was going to be recorded and he said no. The Defendant Cribb did not read Mr. Mayhew his <u>Miranda</u> rights or have him sign a waiver of those rights before speaking to him.

59. The Defendant Cribb began the interview by telling Mr. Mayhew that he was being investigated. The Defendant Cribb did not tell Mr. Mayhew what he was being investigated for.

60. The Defendant Cribb asked Mr. Mayhew background questions. The Defendant Cribb then asked Mr. Mayhew questions about going home during his shift and about golf.

61. Mr. Mayhew answered all of the Defendant Cribb's questions and provided him with exculpatory and exonerating information regarding his reason for going home during his shift and the fact the Defendant Johnson authorized him to do so.

62. Mr. Mayhew recounted for the Defendant Cribb all of his conversations with the Defendant Johnson and the Defendant Hall regarding the matter under investigation.

63. Mr. Mayhew provided the Defendant Cribb with the names of numerous coworkers who would go home or work other jobs while on duty with the full

knowledge of and acquiescence of the Defendant Johnson.

64. Mr. Mayhew also provided the Defendant Cribb with the names of individuals who he believed could corroborate what he was saying if they were willing to speak with the Defendant Cribb without fear of reprisal.

65. The Defendant Cribb took notes during the interview but as far as Mr. Mayhew could tell he did not write down anything that Mr. Mayhew told him which supported him in the matter.

66. The interview lasted approximately 45-60 minutes.

67. Sometime after April 17, 2021, the Defendant Johnson and the Defendant Hall forwarded criminal charges against Mr. Mayhew for investigation to the A.G.'s Office which they were subjectively aware were fabricated and false.

68. Prior to the presentation of Mr. Mayhew's case to the grand jury, the Defendant Johnson, the Defendant Hall, and the Defendant Cribb intentionally withheld known exculpatory information from the grand jury.

69. As a result of the fabricated and false charges leveled against Mr. Mayhew and the intentional suppression of exculpatory information, on March 29, 2018, Mr. Mayhew was indicted on three counts of submitting a false writing.

70. Those false writings were alleged to be time sheets submitted during the period of time the Defendant Johnson authorized Mr. Mayhew to work from home

post-surgery.

71. As a result of the indictment, Mr. Mayhew was forced to turn himself in, submit to the booking process, and had his photograph released to the local media by the LCSD.

72. Mr. Mayhew's liberty was restrained due to the imposition of conditions on his release pending trial and those restrictions on his liberty continued throughout the pendency of the fabricated and false charges against him.

73. Due to his inability to find employment and earn a living Mr. Mayhew was forced to request a public defender as an indigent defendant.

74. The total amount of loss claimed by the prosecution based upon the fabricated and false charges against Mr. Mayhew amounted to approximately $3,000.

75. After his arraignment the prosecution mentioned a plea bargain offer to Mr. Mayhew's public defender, whereby Mr. Mayhew would be allowed to plead guilty to a single misdemeanor charge and reimburse the money he allegedly stole.

76. Despite having no intention to ever plead guilty to the fabricated and false charges leveled against him, the prosecution withdrew the plea bargain soon after the offer due to the Defendant Johnson throwing a "screaming fit" and insisting that any plea bargain offer to Mr. Mayhew had to be for a felony and must include jail time.

77. The Defendant Johnson's intent in insisting that Mr. Mayhew plead guilty to

a felony charge and jail time was to ensure that Mr. Mayhew could neither serve in a law enforcement capacity again nor run against him for Sheriff.

78. With the assistance of a relative, Mr. Mayhew was able to retain counsel and substitute retained counsel for his public defender.

79. True to form the only other plea offer made to Mr. Mayhew by the prosecution was for him to plead guilty to a felony charge with jail time. In accordance with Mr. Mayhew's wishes, counsel for Mr. Mayhew advised the prosecution there would be no plea bargain.

80. During the pendency of the criminal case, around March 31, 2019, Mr. Mayhew had a conversation with a former sheriff's deputy who worked on his shift.

81. This former sheriff's deputy then a candidate for elected office in Lee County and eager to curry favor with the Defendant Johnson obsequiously reported to the Defendant Johnson that Mr. Mayhew had allegedly told him to tell the Defendant Johnson that "he has an ass-whipping coming."

82. The Defendant Johnson forwarded this frivolous matter to the A.G.'s Office for investigation and prosecution as retaliation against a public servant.

83. The Defendant Johnson and the Defendant Cribb were subjectively aware the charge lacked any arguable merit because the Defendant Johnson's actions in referring the original prosecution of Mr. Mayhew to the A.G.'s Office, based on

fabricated and false evidence and his intentional withholding of exculpatory evidence, was not a lawful action by a public servant as required by the statute.

84. Furthermore, in <u>Seals v. McBee</u>, 898 F.3d 587 (5th Cir. 2018), the Court of Appeals had already struck- down a nearly identical statute in Louisiana criminalizing the making of threats against a public official.

85. Due to the baseless retaliation against a public servant charge, Mr. Mayhew was again required to turn himself in, submit to the booking process, and have his photograph released to the local media by the LCSD.

86. Mr. Mayhew's liberty was again restrained due to the imposition of conditions on his release pending trial and those restrictions on his liberty continued throughout the pendency of the fabricated and false charges against him.

87. As the criminal case progressed it became increasingly clear to the prosecution, after a change in prosecutors, that nothing the Defendant Johnson, the Defendant Hall, and the Defendant Cribb alleged against Mr. Mayhew added up.

88. Furthermore, a review of the prosecution's files inherited from the prior prosecutor showed a lack of exculpatory evidence and statements provided by Mr Mayhew's counsel; the Defendant Cribb's notes of statements he took from witnesses; the Defendant Cribb's notes of his interview with Mr. Mayhew; any statement from the Defendant Johnson; and any statement from the Defendant Hall.

15

89. After re-investigating the charges against Mr. Mayhew with a new investigator, re-interviewing witnesses, and considering the exculpatory information provided to them by Mr. Mayhew's counsel, on August 31, 2020, the prosecution filed a Motion to *Nolle Prosequi* Indictment as to both indictments pending against Mr. Mayhew.

90. On September 2, 2020, Mr. Mayhew responded to both motions and requested that any dismissal of the charges against Mr. Mayhew by the Court be with prejudice.

91. On September 8, 2020, the criminal charges against Mr. Mayhew terminated in his favor when the Circuit Court of Lee County entered an Order Granting Motion to *Nolle Prosequi* Indictment with Prejudice, in cause numbers CR18-338, and CR-19-693.

92. The Defendant Johnson, the Defendant Hall, and the Defendant Cribb were at all times relevant to this civil action acting under color of law.

93. The Defendant Johnson, the Defendant Hall, and the Defendant Cribb were at all times relevant to this civil action acting deliberate indifference and with reckless disregard to Mr. Mayhew's federally protected rights.

94. The Defendant Johnson was at all times relevant to this civil action a final policy making official for the Defendant Lee County with respect to all law enforcement decisions generally and specifically with respect to the prosecutions of Mr.

Mayhew.

95. At all times relevant to this civil action the Defendant Johnson and the Defendant Hall acted within the course and scope of their employment and as agents and employees of the Defendant Lee County.

96. At all times relevant to this civil action, the Defendant Johnson and the Defendant Hall acted with negligence, gross negligence, and reckless disregard towards Mr. Mayhew's rights under Mississippi law.

(Claims Against the Defendant Johnson)

97. The Defendant Johnson, in his individual capacity, was at all times relevant to this civil action the Sheriff of Lee County, Mississippi.

98. The Defendant Johnson, in his individual capacity, is liable to Mr. Mayhew for violating his First Amendment right to be free from retaliation for political activity; Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and Fourteenth Amendment right to be free from the intentional withholding and suppression of exculpatory information during the course of a criminal prosecution; and for false arrest, false imprisonment, malicious prosecution, abuse of process, and tortious interference with contract, made actionable pursuant to Mississippi common law, and the MTCA.

(Claims Against the Defendant Hall)

99. The Defendant Hall, in his individual capacity, was at all times relevant to this civil action the Chief Deputy of the LCSD.

100. The Defendant Hall, in his individual capacity, is liable to Mr. Mayhew for violating his Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and Fourteenth Amendment right to be free from the intentional withholding and suppression of exculpatory information during the course of a criminal prosecution; and for false arrest, false imprisonment, malicious prosecution, and abuse of process, made actionable pursuant to Mississippi common law, and the MTCA.

(Claims Against the Defendant Cribb)

101. The Defendant Cribb, in his individual capacity, was at all times relevant to this civil action an Investigator with the A.G.'s Office.

102. The Defendant Cribb, in his individual capacity, is liable to Mr. Mayhew for violating his Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and Fourteenth Amendment right to be free from the intentional withholding and suppression of exculpatory information during the course of a criminal prosecution; and for false arrest, false imprisonment, malicious prosecution, and abuse of process, made actionable pursuant to Mississippi common law, and the MTCA.

(Claims Against the Defendant Lee County)

103. The Defendant Lee County is liable for the acts and omissions of the Defendant Johnson as its final policy making official with respect to all law enforcement activities.

104. The Defendant Lee County is liable to Mr. Mayhew for violating his First Amendment right to be free from retaliation for political activity; Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and Fourteenth Amendment right to be free from the intentional withholding and suppression of exculpatory information during the course of a criminal prosecution; and for false arrest, false imprisonment, malicious prosecution, abuse of process, and tortious interference with contract, made actionable pursuant to the MTCA.

WHEREFORE, PREMISES CONSIDERED, Mr. Mayhew prays for actual and compensatory damages against all defendants, in an amount to be determined by the trier of fact, for punitive damages against the Defendant Johnson, the Defendant Hall, and the Defendant Cribb, in their individual capacities, in an amount to be determined by the trier of fact, for a reasonable attorney's fee pursuant to 42 U.S.C. § 1988, for all allowable costs of this civil action, and for any and all other relief to which Mr. Mayhew is entitled in law or equity.

Respectfully submitted, this the 8th day of September, 2021.

/s/ Victor Israel Fleitas

VICTOR I. FLEITAS
MS BAR NO. 10259

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
662.840.0270 / Phone
662.840.1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorney for Mike Mayhew