IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MIKE MAYHEW                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:21-CV-141-SA-DAS

JIM JOHNSON (IN HIS INDIVIDUAL CAPACITY);
JOHN HALL (IN HIS INDIVIDUAL CAPACITY)
ROGER CRIBB (IN HIS INDIVIDUAL CAPACITY); AND
LEE COUNTY, MISSISSIPPI                                                        DEFENDANTS

ORDER AND MEMORANDUM OPINION

On September 8, 2021, Mike Mayhew initiated this civil action by filing his Complaint [1], asserting various claims against Jim Johnson, John Hall, Roger Cribb, and Lee County. Mayhew has since filed an Amended Complaint [25] against the same Defendants. On February 11, 2022, Cribb filed a Motion to Dismiss [38]. The other Defendants filed a Joint Motion to Dismiss [47] on April 6, 2022. Both Motions [38, 47] are ripe for review. Having reviewed the parties' filings, along with the relevant authorities, the Court is prepared to rule.[1]

*Relevant Factual and Procedural Background*

Mike Mayhew's employment with the Lee County Sheriff's Department commenced in 2007. He contends that he was a hard worker and had an impeccable work record prior to the events giving rise to this lawsuit.

By way of background, Jim Johnson served as Lee County Sheriff at all relevant times. John Hall served as Johnson's Chief Deputy. As alleged by Mayhew, "[i]t is an established fact at the [Sheriff's Department] that anyone who gets crossways with [Hall] gets fired." [46] at p. 2.

---

[1] Before Mayhew filed his Amended Complaint [25], Cribb filed a Motion to Dismiss [22] the original Complaint [1]. Because that Motion [22] is based on a complaint that is no longer operative and because Cribb has made the same arguments in his Motion [38] presently before the Court, the original Motion [22] is hereby DENIED AS MOOT.

Apparently, Mayhew did just that in late 2016, asserting that he got "crossways with [Hall] . . . over a trivial and non-work related matter." *Id*.

In early 2017, Mayhew learned that he needed surgery to address a "serious health condition." [25] at p. 5. According to Mayhew, "[t]he surgery was expected to require [him] to be completely off work for approximately two to four weeks with a gradual return to full duty afterwards." *Id*. Mayhew approached Johnson about his medical condition and requested that he be permitted to work from home for some period of time after his surgery. Johnson approved the request so long as Mayhew was able to adequately supervise his shift.

On February 6, 2017, Mayhew underwent the scheduled surgery and thereafter began working from home, as had been agreed upon. Mayhew contends that on February 15, 2017, Hall placed a tracking device on Mayhew's patrol car. Mayhew takes the position that Hall did so because he was "eager to fabricate a pretext to fire [him]." *Id*. at p. 4.

On April 17, 2017, Hall called Mayhew in for a meeting, during which Mayhew alleges that Hall "falsely accused [him] of getting paid for work that he did not perform due to his spending time at home during his shift." *Id*. at p. 5. Hall advised Mayhew that he could resign or face termination, noting that the Attorney General's Office would be notified of the allegations for submitting false time reports. Mayhew resigned.[2]

After leaving his employment with the Sheriff's Department, Mayhew "committed himself to running against [Johnson] for Sheriff and told several individuals" of his intent to do so. [46] at p. 6. Mayhew alleges that Johnson learned about Mayhew's plan and began taking steps to damage Mayhew's reputation and career. For example, Mayhew contends that, after he applied for law

---

[2] The reason Mayhew resigned is in dispute. While the Defendants take the position that it is illustrative of Mayhew's guilt as to the allegations against him, he contends that he did so because he felt that he had no other legitimate option.

enforcement positions with two local law enforcement agencies, both agencies declined to extend an employment offer to him because Johnson told them not to hire him.

In August 2017, Mayhew called Johnson regarding rumors of an Attorney General's Office investigation against Mayhew. Mayhew and Johnson then met in person to further discuss the matter. According to Mayhew, Johnson confirmed that he had communicated with the Public Integrity Division of the Attorney General's Office—specifically, Investigator Roger Cribb—about Mayhew's alleged submission of false time reports during the time period he was authorized to telework following his surgery (February 2017 through April 2017). In his Amended Complaint [25], Mayhew alleges that during the meeting Johnson told him that he had "taken care of it." [25] at p. 9. Mayhew also avers that Johnson encouraged him to not run for Sheriff but to instead run for Justice Court Judge. Mayhew declined.

At some point after that meeting, Mayhew accepted an employment offer with a wrecker service in Lee County. However, Mayhew was unexpectedly terminated when his employer advised him that he was "hurting [the employer's] business." [25] at p. 10. Mayhew contends that the wrecker service terminated him because Johnson had notified the wrecker service that it would be removed from Lee County's wrecker rotation if the business continued to employ Mayhew.

At some point in Fall 2017, Investigator Cribb called Mayhew, advised him of the investigation, and asked if Mayhew would be willing to meet with him. Mayhew agreed, and the two met at a hotel in Tupelo, Mississippi. The meeting lasted approximately 45 to 60 minutes. Cribb asked Mayhew "questions about going home during his shift and about golf." [25] at p. 12. Mayhew alleges that he explained during the meeting that he was authorized to work from home during the period of time at issue. He also provided the names of multiple people who could corroborate his version of events.

Mayhew contends that, despite conducting the interview, Cribb "deliberately failed to reasonably and objectively investigate the charge," averring that he instead "relied on knowingly fabricated evidence, refused to conduct witnesses [sic] interviews from individuals with material evidence tending to show [his] innocence, and falsified statements in order to make [him] appear culpable." [25] at p. 13. Mayhew further alleges that Cribb, Johnson, and Hall acted in concert to arrest and prosecute him for three counts of submitting a false writing—crimes which they knew he did not commit. As to the prosecution of the charges, Mayhew further alleges that those three individuals knowingly fabricated evidence, concealed and suppressed relevant and material evidence, and withheld exculpatory information from the grand jury. Mayhew was indicted on three counts on March 29, 2018. He was thereafter "forced to surrender himself to the Lee County Adult Detention Center, submit to the booking process, and have his photograph released to the local media by the [Sheriff's Department]." *Id*. at p. 14-15.

Mayhew's Amended Complaint [25] further alleges that the prosecution initially offered him a chance to plea to a misdemeanor charge but that the offer was rescinded after Johnson "threw a 'screaming fit' and insist[ed] that any plea bargain offered to [Mayhew] had to be for a felony offense and must include jail time." *Id*. at p. 15-16.[3] During the pendency of the criminal prosecution, another separate charge was brought against Mayhew, which he describes as follows in his Amended Complaint [25]:

> 90.    During the pendency of the criminal case, around March 31, 2019, Mr. Mayhew had a conversation with a former sheriff's deputy who had worked on his shift and had been identified as a witness.
>
> 91.    This former sheriff's deputy then a candidate for elected office in Lee County was eager to curry favor with the Defendant Johnson and obsequiously reported to the Defendant Johnson that Mr. Mayhew had allegedly told him

---

[3] Mayhew states that he never intended to accept the offered plea bargain.

> to tell the Defendant Johnson that "he has an ass-whipping coming."
>
> 92. The Defendant Johnson forwarded this frivolous matter to the Defendant Cribb at [the] A.G.'s Office for investigation and prosecution as retaliation against a public servant.
>
> 93. The Defendant Johnson and the Defendant Cribb were subjectively aware the charge lacked any arguable merit because the Defendant Johnson's actions in referring the original prosecution of Mr. Mayhew to the A.G.'s Office, based on fabricated and false evidence and his intentional withholding of relevant, material, and exculpatory evidence, was not a lawful action by a public servant as required by the statute.

[25] at p. 16-17.

Mayhew was again required to turn himself in, submit to a strip search and to the booking process, and have his photograph released to the local media—in addition to having his liberty restricted due to conditions on his release pending trial. Despite these two sets of charges against him, the prosecution ultimately stalled because, according to Mayhew, "it became increasingly clear . . . that nothing the Defendant Johnson, the Defendant Hall, and the Defendant Cribb alleged against [him] added up." [25] at p. 18.

After a change in prosecutors, the prosecution filed a motion to *nolle prosequi* the indictment as to all charges. On September 8, 2020, the Circuit Court of Lee County granted the motion, and the charges were dismissed *with prejudice*.

In this civil action, Mayhew asserts a myriad of claims against Johnson, Hall, Cribb, and Lee County. As to all Defendants, he alleges the following constitutional violations: (1) "violating his First Amendment right to be free from retaliation for political activity"; (2) "violating his Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause"; (3) "violating his Fourteenth Amendment right to be free from the fabrication of evidence,

and the withholding and suppression of relevant, material and exculpatory information during the course of a criminal prosecution"; and (4) "violating his Fourteenth Amendment right to be free from selective prosecution based on First Amendment political activity." [25] at p. 20-22. As to only Johnson, Hall, and Cribb, he asserts a state law claim for malicious prosecution. Finally, he asserts a tortious interference with contract claim against only Johnson.

*Motion to Dismiss Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

Ultimately, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff 's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)), cert. denied, 133 S. Ct. 192, 184 L. Ed. 2d 38 (2012). Therefore, the Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.

*Analysis and Discussion*

The Court first turns to Johnson, Hall, and Lee County's (collectively "Municipal Defendants") Joint Motion to Dismiss [47] because the parties' briefing in connection with that

Motion [47] clarifies some of the claims and issues before the Court. Thereafter, the Court will address Cribb's Motion to Dismiss [38].

I.   *Municipal Defendants' Joint Motion to Dismiss [47]*

In their Joint Motion to Dismiss [47], the Municipal Defendants request that the Court dismiss several (but not all) of Mayhew's claims on the basis of untimeliness. Different arguments are applicable to each claim, and the Court will therefore address them separately.

A.   *First Amendment Retaliation Claim*

The Municipal Defendants first contend that their purported violation of Mayhew's First Amendment right to be free from retaliation for political activity is time barred. They specifically argue that Mayhew's "alleged adverse employment action occurred on April 17, 2017, when he resigned, and his Complaint was not filed until September 8, 2021. Therefore, Plaintiff's claims are barred by the three-year statute of limitations." [48] at p. 3.

In response, Mayhew contends that the Municipal Defendants misunderstand his claim. In particular, he avers:

> At the heart of the Municipal Defendants' misunderstanding of the gravamen of Mr. Mayhew's First Amendment retaliation claims is their erroneous conclusion that the retaliatory act against Mr. Mayhew was his constructive discharge on April 17, 2017. As set forth in his First Amended Complaint, the retaliation of which Mr. Mayhew actually complains is premised upon the post-termination denial of employment opportunities, and the leveling of the pursuit of knowingly false charges against Mr. Mayhew which continued until those charges were dismissed with prejudice on September 8, 2020.

[52] at p. 14.

The Municipal Defendants, in reply, explain that the above-quoted language "clarified that the cause of action for [Mayhew's] First Amendment retaliation claim is the alleged false arrests and prosecution he claims were in retaliation for his declaration to run for the position of Sheriff

of Lee County and is not based on [his] employment status with the Lee County Sheriff's Department." [53] at p. 2. In light of that clarification, the Municipal Defendants withdrew their request for dismissal of that claim.

The Municipal Defendants' request for dismissal of Mayhew's First Amendment retaliation claim against them is therefore DENIED.

B.    *Fourth Amendment Claim*

The Municipal Defendants next contend that Mayhew's false arrest claim for the first set of criminal charges against him is time barred because he was indicted on March 29, 2018 but did not file this lawsuit within three years of that date.

In response, Mayhew notes that, in making this argument, the Municipal Defendants incorrectly cite case law relating to arrests made *without* legal process. Mayhew contends that his claim is based upon an arrest pursuant to legal process and that a different line of case law is applicable as to the commencement of the statute of limitations for the claim.

The Fifth Circuit has recently explained the difference in the accrual date for these types of Fourth Amendment violations:

> The accrual date depends on whether [the plaintiff's] claim more closely resembles one for false imprisonment or one for malicious prosecution. A false-imprisonment claim is based upon detention without legal process. It begins to run at the time the claimant becomes detained pursuant to legal process. A malicious-prosecution claim is based upon detention accompanied . . . by *wrongful institution* of legal process. *It does not accrue until the prosecution ends in the plaintiff's favor.*

*Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)) (additional citations and internal quotation marks omitted; emphasis added).

Mayhew contends that his Fourth Amendment claim falls within the second category—that is, it is based upon the wrongful institution of legal process against him. He contends that he "was arrested pursuant to a warrant issued through the normal legal process which he contends was the result of fabricated charges and the deliberate misleading of the grand jury by the Municipal Defendants." [52] at p. 20. He takes the position that the limitations period applicable to his claim commenced on the date the charges were dismissed, which was September 8, 2020. Therefore, he argues he timely initiated this lawsuit.

The Municipal Defendants concede this point in their Reply [53], noting their withdrawal of their request for dismissal considering Mayhew's clarification. The Court agrees. To the extent the Municipal Defendants' Motion [47] seeks dismissal of that claim, it is DENIED.

C.      *Tortious Interference with Contract Claim (Against Johnson only)*

Finally, the Municipal Defendants seek dismissal of Mayhew's tortious interference with contract claim, which was asserted only against Johnson. The Municipal Defendants contend that the three-year limitations period for that claim expired prior to the commencement of this action. In response, Mayhew states that he agrees that the claim is "not independently actionable based on the passing of the statute of limitations[.]" [52] at p. 21.

Consequently, to the extent the Motion [47] seeks dismissal of Mayhew's tortious interference with contract claim, it is GRANTED. That claim is hereby dismissed *with prejudice*.

II.     *Cribb's Motion to Dismiss [38]*

The Court now turns to Cribb's Motion [38]. Cribb contends that he is entitled to qualified immunity as to the federal claims against him, and he further avers that Mayhew's state law claim against him for malicious prosecution is insufficiently pled. Before addressing the merits, the Court notes that Mayhew specifically withdrew his Fourteenth Amendment claim based upon the alleged

withholding and suppression of exculpatory evidence before the grand jury. He also withdrew his Fourteenth Amendment Equal Protection claim based upon selective prosecution. Those claims are hereby dismissed *with prejudice*.[4]

The Court notes (as did Cribb in his Reply Memorandum [57]) that Mayhew states in his Response Memorandum [46] that he "withdraws his claim against [Cribb] for violating the Fourteenth Amendment by withholding and suppressing exculpatory evidence." [46] at p. 32. When setting forth that claim in his Amended Complaint [25], Mayhew alleged that Cribb (among others) was liable for "violating his Fourteenth Amendment right to be free from *the fabrication of evidence*, and the withholding and suppression of relevant, material and exculpatory information during the course of a criminal prosecution[.]" [25] at p. 21 (emphasis added). Thus, Mayhew's withdrawal language in his Response Memorandum [46] did not fully track the language of his Amended Complaint [25]. Nevertheless, he did not otherwise make clear that he still seeks to pursue a Fourteenth Amendment claim based solely on the fabrication of evidence (and he specifically addresses that issue in connection with his argument in opposition to dismissal of his Fourth Amendment claim). The Court therefore makes clear that its dismissal of this claim constitutes a dismissal of this particular Fourteenth Amendment claim *in its entirety*.

Mayhew's remaining claims against Cribb are: (1) First Amendment retaliation for political activity; (2) violation of his Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause; and (3) malicious prosecution in violation of state law.

A.    *Federal Claims*

Concerning Mayhew's two remaining federal claims against him, Cribb raises qualified immunity.

---

[4] To be clear, Mayhew withdrew those claims *only as to Cribb*. Thus, those claims are dismissed only to the extent they are asserted against Cribb.

10

"Qualified immunity shields government officials performing discretionary functions from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Woods v. Carroll Cnty., Miss.*, 2009 WL 1619955, at *2 (N.D. Miss. June 9, 2009) (citing *Huang v. Harris Cnty.*, 264 F.3d 1141 (5th Cir. 2001); *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001)). The purpose of the doctrine is to "ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

Once a defendant raises a qualified immunity defense, the reviewing court must engage in the following two-step analysis:

> The court determines whether the defendant has violated an actual constitutional right, and if the answer is "no," the analysis ends. If the answer is "yes," then the court considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.

*Reese v. Gray*, 2011 WL 302873, at *4 (N.D. Miss. Jan. 27, 2011) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)) (internal citations omitted); *see also*, *e.g.*, *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) ("To determine whether qualified immunity applies, a court engages in a two-part inquiry asking: first, whether taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right; and second, whether the right was clearly established.") (quotation marks and citations omitted).

Specifically concerning qualified immunity at the motion to dismiss stage, the Fifth Circuit has made clear that "[w]hen a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation to *carefully scrutinize the complaint* before subjecting public

11

officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Cons. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)) (internal quotation marks and citations omitted; additional citation omitted; emphasis added); *see also Smith v. Leflore Cnty., Miss.*, 2015 WL 5655830, at *4 (N.D. Miss. Sept. 24, 2015) (quoting *Nieto v. San Perlita Indep. Sch. Dist.*, 894 F.2d 174, 177-78 (5th Cir. 1990)) ("Plaintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense.") (emphasis added).

  i. *Fourth Amendment*

The Court will first address Mayhew's Fourth Amendment claim. In broad terms, Mayhew's Amended Complaint [25] seeks to hold Cribb liable for "violating his Fourth Amendment right to be free from arrest, detention, and restraint of liberty without probable cause." [25] at p. 21. Mayhew contends that his Fourth Amendment rights were violated on two different occasions—in particular, the two separate times that charges were brought against him.

The Constitution "does not include a 'freestanding' right to be free from malicious prosecution." *Ellis v. Lowndes Cnty.*, 2017 WL 6045440, at *4 (N.D. Miss. Dec. 6, 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)). But "the initiation of criminal charges without probable cause may set in force events that run afoul of the Fourth Amendment if the accused is seized and arrested[.]" *Id.* (quoting *Deville*, 567 F.3d at 169).

Where a plaintiff makes no allegation that the subject defendant actually arrested or detained him, the defendant "will only be liable . . . if his allegedly wrongful action . . . was causally connected to [the plaintiff's] arrest and detention." *Id.* (citing *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016)). "In this regard, Section 1983 . . . requires a showing of proximate causation,

which is evaluated under the common law standard . . . that makes a person liable for the natural consequences of his actions." *Id*. (quoting *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005)) (internal punctuation omitted).

In the case *sub judice*, Mayhew alleges his Fourth Amendment rights were violated when, as a result of the indictment returned against him, he "was forced to surrender himself to the Lee County Adult Detention Center, submit to the booking process, and have his photograph released to the local media[.]" [25] at p. 14-15. He makes no allegation that Cribb actually executed the arrest, but he does aver that Cribb is liable for failing to adequately investigate the case and for withholding exculpatory information when presenting the case to the grand jury.

Cribb argues that the independent intermediary doctrine absolves him from liability. Pursuant to the independent intermediary doctrine, "even an officer who acted with malice . . . will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dept.*, 824 F.3d 548, 554 (5th Cir. 2016) (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)) (additional citation omitted; emphasis in original). Stated differently, "once facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation." *Porter v. Farris*, 328 F. App'x 286, 288 (5th Cir. 2009) (quoting *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)).

"But the intermediary must be truly independent. Thus, 'the initiating party may be liable for false arrest if the plaintiff shows that the deliberations of that intermediary were in some way *tainted* by the actions of the defendant.'" *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *Deville*, 567 F.3d at 170; *Hand,* 838 F.2d at 1428) (internal quotation marks omitted;

13

emphasis in original).[5] The Fifth Circuit has previously referred to this exception as the "taint exception." *Id*.; *see also McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).

Here, Mayhew's purported submissions of false time reports were presented to the grand jury. Therefore, the grand jury's returning of an indictment against Mayhew constitutes an independent intermediary (breaking the causal chain), *so long as the "taint exception" is not applicable*. This is where the parties' dispute lies.

Cribb takes the position that Mayhew has alleged only conclusory allegations insufficient to survive dismissal. For instance, Cribb argues "Mayhew provides no facts supporting [his] conclusory allegations. He cites no evidence that was allegedly fabricated by Cribb, identifies no witnesses that Cribb refused to interview, and details no statements that were falsified by Cribb." [39] at p. 10-11. He further contends that Mayhew's Amended Complaint [25] is devoid of any specific information which was allegedly fabricated or kept from the grand jury.

The Court turns to the Amended Complaint [25], cognizant of its duty to "carefully scrutinize" it before subjecting a public official—such as Cribb—"to the burdens of broad-reaching discovery." *Longoria*, 942 F.3d at 263-64. In his Amended Complaint [25], Mayhew alleges that he met with Johnson about the investigation and that during the meeting Johnson told him that he "had spoken to the A.G. Office's investigator, the Defendant Cribb, and told him that he had authorized Mr. Mayhew to work from home after his surgery. According to the Defendant Johnson he had 'taken care of it.'" [25] at p. 9. Thus, Mayhew has clearly alleged that Cribb was

---

[5] The Court is cognizant that, in the qualified immunity context, the "focus is on whether the officer had fair notice that [his] conduct was unlawful [and therefore] reasonableness is judged against the backdrop of the law *at the time of the conduct*." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). In citing *Wilson* (a recent case decided well *after* the conduct at issue), the Court does not apply a different legal standard than was applicable at the time of the relevant conduct in this case. Rather, the Court simply notes *Wilson* as a recent and thorough explanation of the independent intermediary doctrine, which includes citations to cases decided well prior to the facts at issue here.

made aware that Mayhew was permitted to work from home during the relevant time period. Mayhew also alleges that he personally met with Cribb to discuss the allegations sometime in the Fall of 2017. He avers that he explained what happened during the relevant time period, specifically alleging: "Mr. Mayhew answered all of the Defendant Cribb's questions and provided him with information regarding his reason for going home during his shift and the fact the Defendant Johnson authorized him to do so." *Id*. at p. 12. Furthermore, Mayhew alleges that he provided Cribb "with the names of individuals who he believed could corroborate what he was saying if they were willing to speak with [Cribb] without fear of reprisal." *Id*. Thus, Mayhew has alleged facts which, taken as true, show that Cribb was aware that Mayhew had permission to work a flexible schedule during the pertinent time period and, further, was aware of individuals who could corroborate his version of events. However, Mayhew avers that Cribb refused to conduct witness interviews of individuals who could support Mayhew's version of events and that Cribb "falsified statements in order to make [Mayhew] appear culpable." *Id*. at p. 13. In addition, the Court notes Mayhew's allegations regarding the lack of information contained in the prosecution's files:

> [A] review of the prosecution's files inherited from the prior prosecutor showed an absence of information one would expect including: relevant and material evidence regarding the charges, exculpatory evidence and statements provided by [Mayhew's] counsel, the Defendant Cribb's notes of statements he took from witnesses, the Defendant Cribb's notes of his interview with [Mayhew], a statement from the Defendant Johnson[,] and any statement from the Defendant Hall.

[25] at p. 18.

Considering these allegations as a whole, the Court finds that Mayhew has sufficiently alleged specific facts to support his Fourth Amendment claim. Despite Cribb's allegations to the

contrary, the Court does not view these allegations as mere conclusory statements but, instead, sees them as specific allegations which, if true, support Mayhew's claim.

Cribb makes two additional arguments. First, he contends that, even if he had withheld exculpatory information, Mayhew has not alleged that he did so *maliciously*. Second, he argues that there is no clearly established constitutional right to have all exculpatory evidence presented to a grand jury. The Court will address these arguments in turn.

As to whether Mayhew has alleged that Cribb acted maliciously, the Court reiterates the allegations quoted above. Cribb was allegedly aware that Mayhew had been authorized by Johnson himself to work from home during this time period, but he did not relay that information to the grand jury. Furthermore, Cribb was aware of individuals who could corroborate Mayhew's version of events, but Cribb did not communicate with these individuals. Nevertheless, Cribb sought and obtained an indictment against Mayhew. Simply put, taking these facts as true, the Court cannot find that Mayhew has failed to allege that Cribb acted maliciously. The Court rejects this argument.

Cribb's next argument is that "there is no clearly established constitutional right to have all exculpatory evidence presented to a grand jury." [39] at p. 12. He further argues:

> Although not yet addressed by Mississippi courts, this Court in *Porter* concluded that Mississippi courts, if confronted with the question, would adopt the majority rule "that prosecutors are only obligated to present exculpatory evidence to a grand jury if the evidence clearly negates guilt, and such prosecutors are not obligated to present all evidence that is conceivably exculpatory." *Id*. Thus, the grand jury's role as detached intermediary will continue to break the chain of causation in any false arrest claim, even when arguably exculpatory evidence is not presented, as long as all clearly exculpatory evidence is presented." *Id*. Here, Mayhew's excuse is nothing more than arguably exculpatory.

[39] at p. 12.

This is an argument more appropriate for a later stage in the proceedings when all facts are developed. Mayhew has alleged that Cribb did not present exculpatory evidence, such as the fact that he had been authorized to work from home during the relevant time period and that Cribb failed to adequately investigate the claim by failing to communicate with identified witnesses who allegedly could corroborate Mayhew's version of events. The determination as to whether the evidence was *clearly* exculpatory or *arguably* exculpatory is better suited for the summary judgment stage, once discovery has developed further facts. But for purposes of this stage of the proceedings, the Court finds that Mayhew has sufficiently alleged that the evidence was *clearly* exculpatory.

The Court also notes Cribb's reliance on a recent decision from the Southern District of Mississippi, *Burroughs v. City of Laurel, Miss.*, 2021 WL 1723092, at *11 (S.D. Miss. Apr. 30, 2021), for the following proposition: "But in order to overcome a qualified immunity defense, a plaintiff must 'set forth a wealth of specifics and confirming factual details' to support allegations such as fabrication of evidence, concealment of exculpatory evidence, or false testimony." [39] at p. 13.[6] While Cribb's representation of the holding in that case is accurate, the Court notes that the district court's decision cited by Cribb was made at the summary judgment stage—not the motion to dismiss stage. *See generally Burroughs*, 2021 WL 1723092. In fact, in that case, the district court *denied* the defendants' request for dismissal at the motion to dismiss stage. *See Burroughs v. City of Laurel, Miss.*, 2019 WL 4228438, at *6-7 (S.D. Miss. Sept. 5, 2019). Similarly, the Court here finds that Mayhew has alleged facts which, taken as true, overcome the qualified immunity

---

[6] Cribb again invokes *Burroughs* in his Reply Memorandum. *See* [57] at p. 3.

defense. Whether Mayhew can ultimately develop facts sufficient to create a genuine issue of material fact as to those claims is not the question before the Court at this time.[7]

The Court finds that Mayhew has alleged sufficient facts to state a Fourth Amendment claim against Cribb. Therefore, to the extent Cribb's Motion [38] seeks dismissal of that claim, it is hereby DENIED.

    ii.    *First Amendment*

Mayhew contends that Cribb should be held personally liable for violating Mayhew's First Amendment right to be free from retaliation for political activity.

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To establish a First Amendment retaliation claim in this context, a plaintiff must prove three elements: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keenan*, 290 F.3d at 258). And to defeat a claim of qualified immunity, the Fifth Circuit has explained that the plaintiff must show the absence of probable cause: "In applying the test for qualified immunity,

---

[7] Although the Court finds that Mayhew has alleged more than "mere allegations of taint," the Court notes the Fifth Circuit's recognition of a low threshold for plaintiffs in this area at the motion to dismiss stage: "Thus, although our precedent demonstrates that 'mere allegations of taint' are insufficient at summary judgment, such allegations may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin*, 866 F.3d at 690 (noting multiple district court cases supporting that proposition and one case reaching the opposite conclusion). This Court finds the rationale underlying that rule to make sense, as a plaintiff may not at the initial stage of the litigation be privy to the facts supporting the taint exception, particularly when it involves secret grand jury proceedings. The factual allegations of Mayhew's Amended Complaint [25] certainly satisfy that threshold.

we explained that '[i]f probable cause existed . . . or if reasonable police officers could believe probable cause existed, they are exonerated." *Id*. at 730 (quoting *Keenan*, 290 F.3d at 262).

As to the first element, Mayhew alleges that his announcement that he was going to run against Johnson for Sheriff constituted a First Amendment protected activity. *See*, *e.g.*, *Phillips v. City of Dallas*, 781 F.3d 772, 778 (5th Cir. 2015) ("This court has been unequivocal in its recognition of a First Amendment interest in candidacy.") (citations omitted). Cribb does not request dismissal on this basis, and the Court sees no need to address it any further.

Concerning the second element, Mayhew must allege that Cribb's conduct caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity. *See Cass*, 814 F.3d at 729. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, *including criminal prosecutions*, for speaking out[.]" *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006) (citations omitted; emphasis added). Stated differently, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Izen v. Cataline*, 398 F.3d 363, 367 n. 5 (5th Cir. 2005) (quoting *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)) (additional citation omitted).

Seeking dismissal on this element, Cribb contends that "Mayhew does not allege that he withdrew from the race or was otherwise deterred from continuing to campaign for public office; nor does he allege that a person less firm than he would have ceased political activity." [39] at p. 8. The Court rejects this argument, as it is certainly plausible that subjecting a person to prosecution in retaliation for the commencement of a political campaign would cause a person of ordinary firmness to not engage in the campaign. To adopt Cribb's argument would, in this Court's view,

19

constitute a construction much narrower than is appropriate. *See McLin*, 866 F.3d at 697 ("The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.") (citations omitted); *see also Woolum v. City of Dallas, Tex.*, 2019 WL 2604125, at *7 (N.D. Tex. May 24, 2019) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012)) ("'Arresting someone in retaliation for their exercise of free speech rights' [being] sufficient to chill speech is an understatement.").

The third element is a closer call. As noted above, a plaintiff must show that "the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Cass*, 814 F.3d at 729. Cribb contends that Mayhew's claim falls short as to this element for the following reasons:

> Mayhew pleads no factual allegations illustrating Cribb's motivation or otherwise supporting the conclusory claim that Cribb acted in retaliation for Mayhew's political aspirations. Mayhew does not plead that Cribb was aware of Mayhew's campaign, that Cribb had some interest in the race, or that Cribb was even aware of Mayhew's campaign. Mayhew's allegation is nothing more than a speculative conclusion, unsupported by facts.

[39] at p. 8.

As an initial matter, the Court rejects Cribb's argument that the Amended Complaint [25] contains no allegations that Cribb was made aware of Mayhew's political campaign. After setting forth in his Amended Complaint [25] the conversation he had with Johnson wherein Johnson allegedly told him that he would "take care of" the investigation *and asked him to not run for Sheriff*, Mayhew alleges that he "recounted for the Defendant Cribb *all* of his conversations with the Defendant Johnson and the Defendant Hall regarding the matter under investigation." [25] at p. 12 (emphasis added). Thus, it necessarily follows that Mayhew has alleged Cribb was aware of

Mayhew's intent to run for Sheriff—in particular, because Mayhew alleges that he himself advised Cribb of the same. And while Cribb argues that Mayhew has not alleged that he "had some interest in the race," the Court notes that Mayhew's entire theory is that all of the Defendants' actions were part of a concerted scheme.

Although Mayhew will certainly have to come forward with competent evidence to support that theory, the Court finds that, considering the extensive allegations contained in the Amended Complaint [25], it would be premature and improper to dismiss Mayhew's claim on that basis at this stage in the proceedings. In reaching this conclusion, the Court notes that, taking as true the allegations of Mayhew's Amended Complaint [25], Cribb was aware of Mayhew's intent to seek Johnson's political position, that Mayhew had a reasonable explanation for the allegedly unlawful false submissions, and he nevertheless failed to adequately investigate (including but not limited to refusing to speak to identified witnesses) as well as failing to properly advise the grand jury of the underlying facts. Again, whether Mayhew ultimately prevails on the claim is a separate matter not before the Court at this time, but for now the Court cannot say that Mayhew has altogether failed to state a claim. *See In re McCoy*, 666 F.3d at 926 (noting that the reviewing court's role at this stage "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").

Furthermore, "[f]or a First Amendment retaliation claim in which the adverse action the plaintiff alleges is a criminal prosecution, the plaintiff must also establish the state law elements of malicious prosecution." *Mahon v. Pelloat*, 2021 WL 5356908, at *4 (E.D. La. Nov. 17, 2021) (citing *Keenan*, 290 F.3d at 257; *Izen*, 398 F.3d at 366-67).

In Mississippi, there are six elements for a malicious prosecution claim: "(1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such

proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution." *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So.3d 75, 83 (Miss. 2017) (quoting *Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991)). For purposes of the present Motion [38], Cribb takes issue with only the fourth and fifth elements.

As to the fourth element, Cribb argues that Mayhew has not alleged that he acted with malice. "[M]alice in the law of malicious prosecution is a term used in an artificial and legal sense. It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice." *Id.* (internal and additional citations omitted). "In light of this definition, when suing a law-enforcement officer for malicious prosecution, a plaintiff . . . has to show the officer instituted [the] criminal proceeding with a purpose *other than doing his or her job*, which includes bringing criminal offenders to justice." *Id.* (emphasis in original).

Cribb admits that Mayhew summarily alleges that he acted maliciously, but he argues that, despite his allegation, Mayhew has not alleged any *specific* facts to support his position. The Court again turns to the allegations of Mayhew's Amended Complaint [25]. As emphasized above, Mayhew alleges that Cribb was aware that Mayhew had been authorized by Johnson himself to work from home during the relevant time period, but he did not relay that information to the grand jury. Furthermore, Mayhew avers that he made Cribb aware of individuals who could corroborate Mayhew's version of events, but Cribb did not communicate with these individuals. However, Cribb nevertheless sought and obtained an indictment against Mayhew.

"The determination of malice is a question of fact to be determined by the jury unless only one conclusion may reasonably be drawn from the evidence. Malice may be and usually is shown by circumstantial evidence." *Donaldson v. Ovella*, 228 So.3d 820, 831 (Miss. Ct. App. 2017). The

Court finds that Mayhew has sufficiently alleged malice for purposes of the motion to dismiss stage. Cribb's argument is rejected.

Concerning the fifth element (the absence of probable cause), Cribb contends that the investigation and prosecution were supported by probable cause: "The Lee County grand jury — an independent intermediary — heard the evidence and indicted Mayhew on all charges presented. Though Mayhew would argue that the grand jury's deliberations were tainted due to fabricated evidence and suppression of exculpatory material, he pleads no facts to support that theory." [39] at p. 16-17. Cribb points to a prior decision of this Court concerning the interplay between a grand jury's decision to return an indictment and a malicious prosecution claim:

> The Mississippi Court of Appeals recently opined that under Mississippi law, the existence of an indictment does not conclusively establish probable cause but rather is prima facie evidence of probable cause, which may be contradicted by evidence of significant irregularities in the grand jury proceedings. Significant irregularities in the grand jury proceeding may, in turn, be shown by establishing that the indictment was obtained by failing to make a full and complete statement of facts to the grand jury or district attorney, by the withholding of information by the prosecutor which might have affected the result, or by showing that the indictment was produced by the misconduct of the party seeking indictment.

*Cardenas v. Maslon*, 93 F. Supp. 3d 557, 573 (N.D. Miss. 2015) (citing *Delaney v. Miss. Dep't of Pub. Safety*, 2013 WL 286365, at *10 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 279 (5th Cir. 2015); *Springfield v. Members 1st Cmty. Fed. Credit Union*, 106 So.3d 826, 830 (Miss. Ct. App. 2012)) (additional citations omitted).

Although recognizing that the indictment constitutes *prima facie* evidence of probable cause, the Court, viewing the alleged facts (emphasized multiple times above) in the light most favorable to Mayhew, finds that he has, at a minimum, stated facts illustrating irregularities in the grand jury proceedings. This includes the purported failure to disclose that he was permitted to

23

work from home during the time period when he allegedly submitted false time reports, as well as the failure to adequately investigate and communicate with witnesses who could corroborate Mayhew's version of events and purportedly falsifying statements that militated in favor of Mayhew's guilt. The Court rejects Cribb's request for dismissal.

Consequently, to the extent Cribb's Motion [38] seeks dismissal of Mayhew's First Amendment claim, it is DENIED.

B.      *State Law Claim*

Mayhew's state law claim against Cribb is based upon malicious prosecution. Because the Court analyzed the viability of that claim under Mississippi law in the preceding section, it will not repeat that analysis here. However, the Court incorporates its analysis from that section and concludes that Cribb's request for dismissal of Mayhew's malicious prosecution claim against him is not well-taken. To the extent the Motion [38] seeks dismissal of that claim, it is hereby DENIED.

*Conclusion*

For the reasons set forth above, Cribb's original Motion to Dismiss [22] is DENIED AS MOOT. The Municipal Defendants' Joint Motion to Dismiss [47] is GRANTED IN PART and DENIED IN PART. Mayhew's tortious interference with contract claim against Johnson is dismissed *with prejudice*. He shall be permitted to proceed on all other claims against the Municipal Defendants. Cribb's renewed Motion to Dismiss [38] is GRANTED IN PART and DENIED IN PART. Mayhew's Fourteenth Amendment claims against Cribb are dismissed *with prejudice*. He shall be permitted to proceed on all other claims. The stay of this case is hereby lifted.

SO ORDERED, this the 10th day of August, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

24